UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EMAN MAHMOUD HUSSEIN AL MAZARY,

Petitioner,

v.

PHILIP RHONEY, Acting Field Office Director, Buffalo Field Office, U.S. Immigration and Customs Enforcement, in his official capacity; MICHAEL BALL, Acting Deputy Field Office Director, U.S. Immigration and Customs Enforcement, in his official capacity; DAVID VENTURELLA, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security, in his official capacity; TODD BLANCHE, U.S. Attorney General, in his official capacity,[1]

Respondents.

**DECISION AND ORDER**

6:26-CV-6098 EAW

## INTRODUCTION

Represented by counsel, Eman Mahmoud Hussein Al Mazary ("Petitioner" or "Al Mazary"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Dkt.

[1] Scott A. Cicirello, Sheriff of Allegany County, is terminated as a defendant because he no longer is Petitioner's custodian. Pursuant to Federal Rule of Civil Procedure 25(d), Philip Rhoney is automatically substituted for Stephen Kurzdorfer; Michael Ball is substituted for Joseph Freden; David Venturella is substituted for Todd Lyons; Markwayne Mullin is substituted for Kristi Noem; and Todd Blanche is substituted for Pamela Bondi. The Clerk of Court is directed to update the docket to reflect these substitutions as well as the termination of Scott A. Cicirello as a defendant. The Clerk of Court is also requested to update the docket to reflect the correct spelling of Petitioner's surname.

1), arguing that she was improperly subjected to mandatory detention pursuant to 8 U.S.C. § 1225(b). For the reasons set forth below, the request for a writ of habeas corpus is granted.

## BACKGROUND

### A. Factual Background

Al Mazary is a citizen of Jordan who first entered the United States in April 2002, on a B1/B2 visa. (Dkt. 1 at ¶¶ 1-2; Dkt. 13-3 at 1). Except for briefly traveling abroad on several occasions—trips that were authorized by the government pursuant to a grant of advance parole—Al Mazary has lived in the United States continuously since April 2002. (*Id.* at ¶ 2). In 2018, Al Mazary married Khaled Ismail Omer ("Omer"), a United States citizen; they live in Poughkeepsie, New York, with their 14-year-old daughter. (*Id.* at ¶ 3).

After their marriage, Omer filed a Form I-130 Petitioner for Alien Relative, and Al Mazary filed a Form I-485 Application to Register Permanent Residence or Adjust Status. an application to adjust status. (*See* Dkt. 13-3 at 21-27). While these applications were pending, U.S. Citizenship and Immigration Services ("USCIS") issued a Form I-512L granting Al Mazary advance parole.[2] (Dkt. 13-3 at 29). Al Mazary then traveled to Jordan, returning to the United States on August 30, 2025. (*Id.* at 28). She was inspected by U.S. Customs and Border Protection at the New York City port of entry and issued a Form I-94,

[2] "Advance parole is a practice whereby the government agrees, before an alien arrives at a port of entry, to allow the alien's physical entry to the United States once he arrives (and while his immigration status is being resolved by immigration officials)." *Ibragimov v. Gonzales*, 476 F.3d 125, 128 n.3 (2d Cir. 2007).

granting her parole until August 28, 2026. (*Id.*). Al Mazary then returned to her home in Poughkeepsie. (Dkt. 1 at ¶ 5).

On January 15, 2026, USCIS denied Al Mazary's Form I-485 and Omer's Form I-130. (Dkt. 13-3 at 21-27). Al Mazary was taken into the custody of U.S. Department of Homeland Security ("DHS"), U.S. Customs and Immigration Enforcement ("ICE"), and issued a Notice to Appear for removal proceedings the same day. (*Id.* at 30-33). She was charged with being an immigrant who, at the time of application for admission, is not in possession of a valid entry, identification, and travel documents in violation of Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I). (*Id.* at 33). Al Mazary was detained at the Allegany County Jail.

**B. <u>Procedural Background</u>**

Represented by counsel, Al Mazary commenced the instant habeas proceeding asserting that she is improperly subject to mandatory detention under 8 U.S.C. § 1225 and that she should be immediately released under appropriate conditions of supervision. (Dkt. 1 at 18-19). The Court temporarily enjoined Respondents from transferring her outside the Western District of New York pending a resolution of the petition and ordered Respondents to answer the petition. (Dkt. 2). Al Mazary filed a motion for a temporary restraining order ("TRO")/preliminary injunction ("PI") (Dkt. 4) and a motion to expedite issuance of the writ (Dkt. 5). Respondents filed a response (Dkt. 8), and Al Mazary filed a reply (Dkt. 9).

Respondents filed a motion to dismiss the petition for failure to state a claim (Dkt. 13), a supporting memorandum of law (Dkt. 13-1), a supporting declaration from

Deportation Officer Joseph Amoia (Dkt. 13-2), and selected documents from Al Mazary's immigration file (Dkt. 13-13). Al Mazary filed a memorandum of law in opposition. (Dkt. 14).

Following oral argument on February 25, 2026, the Court issued a text order memorializing its oral decision to grant Al Mazary's motion for a TRO/PI. (Dkt. 15). The Court also issued a written decision (Dkt. 16) explaining that after considering the parties' submissions, Al Mazary had demonstrated a likelihood of success on the merits and irreparable harm without relief being granted. (*Id.* at 2). Therefore, the Court granted the motion for a TRO/PI to the extent that Al Mazary sought a bond hearing. (*Id.* at 2-3). The Court also denied the motion to expedite (Dkt. 5) and allowed the parties an opportunity to submit further briefing on any issues they deemed relevant to resolving the petition.

As per the Court's instructions in Docket 16, a bond hearing was held on March 4, 2026, before an immigration judge at which the government bore the burden of demonstrating Al Mazary's dangerousness or risk of flight by clear and convincing evidence. (Dkt. 17). Respondents notified the Court that after the hearing, Al Mazary was released on a bond of $65,000. (*Id.* at 2).

As permitted by Docket 16, Al Mazary timely filed a letter brief discussing addition case law. (Dkt. 18). Respondents did not submit further briefing.

## RELEVANT STATUTORY PROVISIONS

### A. Section 1225

Title 8 of section 1225 of the United States Code, is entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for

hearing." Section 1225(a)(1) is entitled "Aliens treated as applicants for admission" and states as follows:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1). Section 1225(b)(1) entitled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" applies to noncitizens initially determined to be inadmissible based on fraud, misrepresentation, or lack of valid documentation, as well as certain other noncitizens designated in the discretion of the Attorney General. Section 1225(b)(2) entitled "Inspection of other aliens" is a "catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)," *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), and states as follows in subparagraph (A):

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). As courts have recognized, § 1225(b)(2)(A)'s "language requires that 'several conditions must be met' to impose mandatory detention under [§ ]1225(b)(2). *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 308 (E.D.N.Y. 2025) (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 487 (S.D.N.Y. 2025)), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026). "The noncitizen must be: '(1) an applicant for admission; (2) seeking admission; and (3) not clearly and

beyond a doubt entitled to be admitted.'" *Id.* at 308-09 (quoting *Lopez Benitez*, 795 F. Supp. 3d at 487; citing *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025)).

Further, pursuant to 8 U.S.C. § 1182(d)(5)(A), noncitizens detained following inspection under § 1225 can be paroled into the United States "for urgent humanitarian reasons or significant public benefit," based on a "case-by-case" assessment by the government. Parole under § 1182(d)(5)(A) may terminate "automatically" upon the noncitizen's "departure from the United States" or "at the expiration of the time for which parole was authorized," 8 C.F.R. § 212.5(e)(1), or "upon written notice to the [noncitizen]," § 212.5(e)(2)(i). "[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). The alien's case "thereafter . . . shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

## B. <u>Section 1226</u>

Title 8 of section 1226 of the United States Code is entitled "Apprehension and detention of aliens." Section 1226(a) "sets out the default rule," *Jennings*, 583 U.S. at 288, and states as follows:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—

> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> (B) conditional parole; but
>
> (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a). Section 1226(c) "carves out a statutory category of aliens who may not be released under § 1226(a)" and addresses "several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289.

## ANALYSIS

### A. Jurisdiction

Respondents have not raised a jurisdictional challenge to Petitioner's claim regarding the propriety of her continued detention under § 1225(b) without a bond hearing. However, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). This Court previously has ruled that 8 U.S.C. §§ 1252(e)(3), 1252(g), and 1252(b)(9) do not divest district courts of subject matter jurisdiction over a noncitizen's challenge to his or her continued detention under § 1225(b). *Lieogo v. Freden*, No. 6:25-CV-06615 EAW, 2025 WL 3290694, at *2-4 (W.D.N.Y. Nov. 26, 2025); *accord Ivonin v. Rhoney,* No. 6:25-CV-06673 EAW, 2026 WL 199283, at *3 (W.D.N.Y. Jan. 26, 2026). The Court relies on the reasoning set forth in

*Lieogo*, 2025 WL 3290694, at *2-4, to conclude that it has jurisdiction to decide the issues raised in the petition and will not repeat *Lieogo*'s analysis here.

Although Respondents have not raised it, the Court will address the potential mootness issue created by its grant of Al Mazary's motion for a TRO/PI. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937) (noting that jurisdiction requires a case or controversy, which is distinguishable "from a difference or dispute . . . that is academic or moot"). "Article III of the Constitution limits federal jurisdiction to 'Cases' or 'Controversies,' *i.e.*, matters presenting 'concrete legal issues, . . . not abstractions.'" *Godfrey v. Ball*, No. 23-7104, 2024 WL 4471571, at *1 (2d Cir. Oct. 11, 2024) (ellipsis in original) (quoting *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947); citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573 (1992)). "This jurisdictional requirement is lost once an issue is 'moot,' *i.e.*, when it is 'no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). That is not the case here. Although Al Mazary has been released from custody following the Court's grant of a bond hearing at which DHS was ordered to justify her detention by clear and convincing evidence, Respondents have not conceded that the proper source of Al Mazary's detention is § 1226(a) rather than § 1225(b). Thus, the key legal issue presented by the petition—whether Al Mazary was lawfully detained pursuant to § 1225(b) on January 15, 2026, or instead should have been detained pursuant to § 1226(a)—remains live and in controversy. Therefore, the petition is not moot and remains justiciable.

**B. Merits of Petition**

As detailed in the decisions issued by the undersigned in *Quituizaca v. Bondi*, No. 6:25-CV-6527-EAW, 2025 WL 3264440, at *1 (W.D.N.Y. Nov. 24, 2025), and *Lieogo*, 2025 WL 3290694, at *1, a change in policy by the current executive administration has led to the government to rely on a statute historically used to detain noncitizens stopped at the border, 8 U.S.C. § 1225(b), to detain noncitizens residing in this country without bond.

Respondents argue that Al Mazary is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), stating that because she is an "arriving alien" as defined in 8 C.F.R. § 1.2.[3] (Dkt. 13-1 at 2). Al Mazary argues that, under this Court's previous decisions, she does not fall within the purview of § 1225(b)(2)(A) and that the proper detention authority for her situation is § 1226(a). (Dkt. 14. at 2-3 (citing, *inter alia*, *Loja v. Rhoney*, No. 6:25-6830 EAW, 2026 WL 281015, at *1 (W.D.N.Y. Feb. 3, 2026) (finding that "where a

---

[3] As defined in 8 C.F.R. § 1.2:

> [a]rriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked. However, an arriving alien who was paroled into the United States before April 1, 1997, or who was paroled into the United States on or after April 1, 1997, pursuant to a grant of advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States, will not be treated, solely by reason of that grant of parole, as an arriving alien under section 235(b)(1)(A)(i) of the Act.

8 C.F.R. § 1.2.

petitioner is paroled into the country and that parole expires, and the subsequent rearrest is not a continuation of the initial border encounter, but an independent decision to detain the individual after the expiration of his parole, the detention pursuant to that re-arrest arises under § 1226" (citing *Ivonin v. Rhoney*, 2026 WL 199283, at *9 ("suggesting that Ivonin is still on the threshold of entry into this country, based on his re-entry into the United States through parole which expired over seven years ago, stretches 'legal fiction' beyond reason")))).

Respondents acknowledge this Court's decision in *Ivonin* but argue that Al Mazary's circumstances are "materially distinguishable as [she] was not encountered by Respondents years after the expiration of parole" but rather "was paroled into the United States for the specific purpose of continuing with her application of adjustment status," and then "was taken into custody immediately upon the denial of that application when her parole was terminated on notice pursuant to 8 C.F.R. § 212.5(e)(2)(i)." (Dkt. 13-1 at 6). Respondents appear to be focusing on the following passage from *Ivonin*:

> [N]either the relevant statutes, Supreme Court or Second Circuit precedent, nor basic common sense, justify treating an individual like Ivonin who is present in the United States after expiration of parole, any differently than an individual who entered the country without parole. Once Ivonin's parole expired and he remained in the United States, with no action by the government to remove him or otherwise take him into custody, the legal fiction treating him as at the threshold of entry no longer applied.

2026 WL 199283, at *5. As best as the Court can discern, Respondents are suggesting that the lack of time between the termination of Al Mazary's advance parole and her detention is dispositive of the analysis. However, the only authority they cite for this contention is a parenthetical, describing *Cabrera Martinez v. Marich*, 816 F. Supp. 3d 356, 373

(W.D.N.Y. 2025), as "noting 'serious doubts' due to the 'entry fiction' as to whether 8 U.S.C. § 1226(a) applies to an alien whose parole has ended but who was forthwith returned to DHS custody[.]" (Dkt. 13-1 at 6-7 (citing *Cabrera Martinez*, 816 F. Supp. 3d at 373)).

In the above-quoted passage from *Cabrera Martinez*, United States District Judge Lawrence J. Vilardo indicated that his decision "addresse[d] only those who have lived for some time within the country outside their period of parole," 816 F. Supp. 3d at 373, and did "not reach the question of the statutory authority for detention of individuals whose parole has ended but who were in fact 'forthwith . . . returned to [DHS] custody,' 8 U.S.C. § 1182(d)(5)(A), such that they did not accrue unlawful presence time," *id.* § 1182(a)(9)(B)(ii)," 816 F. Supp. 3d at 373 (ellipsis and alteration in original). Judge Vilardo then observed that "[s]everal courts have suggested that such persons also would be detained under [§ ]1226," *id.*, but noted "serious doubts as to whether that conclusion can be squared with the extensive binding precedent on the entry fiction," *id.* (citing *Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *9 (S.D.N.Y. Dec. 17, 2025) (finding that "when ICE affirmatively chose to release Qasemi on parole, it made the decision that he would no longer be subject to the mandatory detention provision of Section 1225(b)(1), as is mandated by subsection (b)(1)(iii)(II)") (alterations omitted)); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 303 (E.D.N.Y. 2025) (concluding that "the grant of humanitarian parole to Rodriguez-Acurio moved her out of expedited removal proceedings and related mandatory detention" [under section 1225(b)]") (first alteration omitted)). Judge Vilardo explicitly left the question for another case. *Id.*

Respondents do not acknowledge that the cited passage from *Cabrera Martinez* is merely dictum. Nor do Respondents explain how the passages cited from *Qasemi* or *Rodriguez-Acurio* support their contention that *Ivonin* is materially distinguishable from the instant case. Moreover, the statements from *Qasemi* and *Rodriguez-Acurio* were made within the district courts' analyses of detention under § 1225(b)(1). But Respondents do not assert that § 1225(b)(1) supplies the basis for Al Mazary's detention here.

Moreover, Respondents do not address the critical similarity between *Ivonin* and this case—the re-arrests of both petitioners were temporally and geographically distant from, and not a continuation of, their initial border encounters. Indeed, that factor was "fundamental[]," *Ivonin*, 2026 WL 199283, at *4, to the Court's finding that Ivonin's detention did not arise under § 1225(b)(2) but instead arose under § 1226(a). As the Court noted, numerous other district courts have found that "in instances, as [in Ivonin's case], where a petitioner's re-arrest was <u>*not*</u> a continuation of the initial border encounter, but an independent decision to detain the individual after the expiration of his parole, the detention pursuant to that re-arrest arises under § 1226." *Id.* (emphasis in original) (citing, *inter alia*, *Campbell v. Almodovar*, No. 1:25-CV-09509 (JLR), 2025 WL 3538351, at *6, *9 (S.D.N.Y. Dec. 10, 2025) (concluding that upon the expiration of his parole, Campbell remained an "applicant for admission" but was no longer "seeking admission" for purposes of § 1225(b)(2)(A); finding that "Campbell's actual presence within the United States at the time of his 2025 re-arrest" rendered his detention pursuant the provisions of § 1226(a), not § 1225)); *see also Simms v. Arteta*, No. 26-CV-5712 (LJL), 2026 WL 2076009, at *3 (S.D.N.Y. July 17, 2026) (finding that the Second Circuit recently reaffirmed the reasoning

in *Qasemi*, 2025 WL 3654098, at *5, that "Section 1225(b)(2)(a) applies only to a noncitizen who is both an 'applicant for admission' and 'seeking admission'" and thus a petitioner who is "an applicant for admission but who entered the country years prior and is 'now seeking only relief from removal' is not seeking admission and is not subject to detention under Section 1225" (quoting *Barbosa da Cunha v. Freden*, 175 F.4th 61, 74 (2d Cir. 2026)).

Here, the undisputed facts are that Al Mazary's arrest on January 15, 2026, in Albany, New York, occurred over 150 miles from the New York City port of entry, and nearly five months after her lawful re-entry into the United States pursuant to a grant of advance parole. Although DHS checked the box on the NTA indicating that she was an "arriving alien" (Dkt. 13-13 at 30), the Form I-200 Warrant for Arrest of Alien (which was not filed by Respondents in this matter) was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [INA] and part 287 of the Code of Federal Regulations to serve warrants of arrest for immigration violations." (Dkt. 4-10). In other words, Al Mazary "was arrested on a DHS Warrant for Arrest that was issued pursuant to Section 1226(a)." *Covelli-Chaparro v. Bondi*, 816 F. Supp. 3d 332, 341-42 (E.D.N.Y. 2026) (warrant authorized an immigration officer to serve it "pursuant to sections 236 and 287 of the [INA]" (citing *Rodriguez-Acurio*, 811 F. Supp. 3d at 310-12 (finding that Sections 236 and 287 of the [INA] and part 287 of title 8 of the Code of Federal Regulations correspond to 8 U.S.C. §§ 1226, 1357 and 8 C.F.R. §§ 287.1-287.12)). "In fact, § 1226(a) 'authorizes detention only "[o]n a warrant issued" by the Attorney General,'" *Sidqui v. Almodovar*, 823 F. Supp. 3d 364, 386 (S.D.N.Y. 2026) (alteration in

original) (quoting *Jennings*, 583 U.S. at 302 (citing 8 U.S.C. § 1226(a)), "and '§ 1225(b) contains no warrant requirement,'" *id.* (quoting *J.U. v. Maldonado*, 805 F. Supp. 3d 482, 493 (E.D.N.Y. 2025) (citing 8 U.S.C. § 1225(b)).

If DHS truly believed that Al Mazary was subject to detention under § 1225, there would have been no reason for them to take the extra step of procuring an arrest warrant under § 1226. *Id.* ("Thus, if the [g]overnment believed that Petitioner was detained pursuant to § 1225, it is unlikely that they would have issued a warrant pursuant to § 1226." (citing *J.U.*, 805 F. Supp. 3d at 493 ("[T]he use of a warrant in March 2024 to arrest and detain Petitioner is further evidence that Petitioner could only be detained pursuant to § 1226(a).")). Although not dispositive standing alone, Al Mazary's arrest on a warrant invoking § 1226 supports the conclusion that her detention is governed by § 1226(a)'s discretionary detention framework. *Covelli-Chaparro*, 816 F. Supp. 3d at 342 (citing, *inter alia*, *dos Santos v. Noem*, No. 1:25-CV-12052-JEK, 2025 WL 2370988, at *7 (D. Mass. Aug. 14, 2025) (finding that "the plain text of Sections 1225 and 1226, together with the structure of the larger statutory scheme, indicates that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States")). Notwithstanding the fact that DHS checked the "arriving alien" box on the NTA, the other evidence in the record, viewed against the robust and growing body of law in this Circuit and elsewhere, convinces the Court that Al Mazary's arrest "was *not* a continuation of the initial border encounter [on August 30, 2025], but an independent decision to detain [her]," *Ivonin*, 2026 WL 199283, at *4 (emphasis in original).

Next, Respondents contend that the Second Circuit's decision in *Ibragimov v. Gonzales*, 476 F.3d 125 (2d Cir. 2007), requires the conclusion that Al Mazary is subject to mandatory detention under § 1225(b)(2)(A) because she "remains an arriving alien despite her parole and also after her parole was terminated." (Dkt. 13-1 at 6 (citing *Ibragimov*, 476 F.3d at 128 (interpreting the definition of "arriving alien" in former 8 C.F.R. § 1.1(q), the precursor to 8 C.F.R. § 1.2))). In *Ibragimov*, the interpretation of § 1225(b)(2)(A) was not at issue, and that statute was not discussed. In fact, *Ibragimov* did not "interpret the text of the INA at all." *Qasemi*, 2025 WL 3654098, at *7. Rather, it determined only that "valid and unambiguous [Immigration and Naturalization Services] [("]INS[")] regulations governing the grant of advance parole" meant that the petitioner was "properly treated as an arriving alien and applicant for admission in removal proceedings once his adjustment of status application was denied," *Ibragimov*, 476 F.3d at 129 (citing former 8 C.F.R. § 1.1(q)). According to the Circuit, that result was required by the text of the regulation itself. *See id.* at 136 ("petitioner's argument that he was no longer an 'arriving alien' when the Notice to Appear issued ignores the regulation's command that "an arriving alien *remains such even if* paroled pursuant to [INA] section 212(d)(5)'" (alteration and emphasis in original) (quoting former 8 C.F.R. § 1.1(q), precursor to 8 C.F.R. § 1.2)).

Although the Second Circuit specifically noted that Ibragimov did not argue that the "INS regulations reflect an impermissible interpretation of the parole statute," *Ibragimov*, 476 F.3d at 137 n.17, it rejected that hypothetical argument by applying the deference required under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S.

837 (1984). Noting that the parole statute is "silent on the question of what status should be accorded to advance parolees who have previously overstayed their visas," the court determined only that the INS regulations were "not arbitrary, capricious, or manifestly contrary to the intent of Congress, and therefore are entitled to deference of the courts." *Id.* (citing *Chevron*, 467 U.S. 837 at 845).

In 2024, the Supreme Court overruled *Chevron* and eliminated the longstanding doctrine of "*Chevron* deference." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024). Now, "courts must exercise independent judgment in determining the meaning of statutory provisions" rather than deferring to agency interpretations when provisions are ambiguous. *Id.* at 394. "*Ibragimov*'s analysis relied heavily on the INS'[s] interpretation in reaching its conclusion, as the statute does not define 'arriving in the United States.'" *Ruiz v. Trump*, No. 2:26-CV-00012, 2026 WL 323254, at *5 (D. Vt. Feb. 6, 2026) (citing *Ibragimov*, 476 F.3d at 134-35).

Since *Loper Bright*, the Second Circuit has not revisited the issues presented in *Ibragimov*, but numerous district courts have relied on *Loper Bright*'s teachings to reject *Ibragimov*'s statutory and regulatory interpretations. *See*, *e.g.*, *Rodriguez-Acurio*, 811 F. Supp. 3d at 306-07 (rejecting the government's argument that 8 C.F.R. § 1.2 is dispositive of definition of "arriving alien" after *Loper Bright*; applying the "plain meaning" of the term "arriving" in § 1225(b)(1)(A)(i), the district court found that the petitioner "can no longer be classified as a noncitizen 'who is arriving in the United States' even though she was initially detained as such in Texas in September 2021" because when ICE arrested her in New York more than four years after she entered the United States, she "was not then,

nor is she now, in the process of 'arriving' in the United States" (citing *Bollat Vasquez v. Wolf*, 460 F. Supp. 3d 99, 111 (D. Mass. 2020) ("Under the statutory language, if applicants are apprehended while crossing the border (whether or not at a check point), they are 'arriving' applicants under the statute, and if apprehended at some point thereafter, they are not 'arriving,' but rather 'alien[s] present in the United States who [have] not been admitted.'" (quoting 8 U.S.C. § 1225(a)(1))); *Cabrera-Lopez v. Hyde*, No. 2:26-CV-00017-CR, 2026 WL 540131, at *5 & n.4 (D. Vt. Feb. 26, 2026) (rejecting *Ibragimov*'s ruling "that parolees who have resided in the United States for years are perpetually considered 'arriving aliens' due to their status as parolees"; collecting cases). Based on the cases discussed above, the aspect of *Ibragimov* on which Respondents rely certainly appears to be on shaky ground after *Chevron*'s demise; yet Respondents wholly failed to address *Loper Bright*.

Respondents' other arguments are similarly unavailing. They note that in *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), "the Supreme Court held that a 'certain other alien' who was encountered within 100 miles of the border, within 14 days of his or her unlawful entry to the United States 'has no entitlement to procedural rights other than those afforded by statute.'" (Dkt. 13-1 at 5 (quoting 591 U.S. at 107)). Respondents note that in a previous case, *Kharshiladze v. Philips*, No. 6:20-CV-06423 EAW, 2021 WL 1525869 (W.D.N.Y. Apr. 19, 2021), this Court relied on *Thuraissigiam* to conclude that "aliens who are on the threshold of entry into the United States are not protected by the procedural protections of constitutional due process" but are instead "entitled only to the process authorized by Congress," *id.* at *2. However, the

circumstances in *Kharshiladze* are quite different than the present case because it was "undisputed that [the] [p]etitioner, who was apprehended and taken into custody *shortly after unlawfully crossing* the border, [was] detained as a 'certain other alien' pursuant to 8 U.S.C. § 1225(b)." *Id.* at *3 (emphasis added). Here, in contrast, Al Mazary did not cross the border illegally; she re-entered the United States lawfully pursuant to a grant of advance parole. And unlike the detention of the petitioner in *Kharshiladze*, Al Mazary's detention was not merely a continuation of a border encounter.

Respondents also cite *Abitih v Wilkinson*, No. 6-20-CV-06403 EAW, 2021 WL 733806, at *2 (W.D.N.Y Feb. 25, 2021), for the proposition that an alien who "is detained shortly after unlawful entry" is not treated, for due process purposes, as having "effected an entry" into the United States, but is instead treated as "on the threshold," just like "an alien detained after arriving at a port of entry." (Dkt. 13-1 at 6). Unlike Al Mazary, the petitioner in *Abitih* attempted to re-enter the United States after his parole had expired, was detained at the border, and was never released into this country after being designated an arriving alien. 2021 WL 733806, at *1. Under those circumstances, the Court found there was "no question that when [he] was apprehended at the border between the United States and Canada on June 3, 2019, he was appropriately deemed an arriving alien who had not effected a legal entry into the United States" and detained under § 1225(b). *Id.* at *2. The facts in *Abitih* could not be more different than Al Mazary's situation, and that case does not aid Respondents' position.

## CONCLUSION AND ORDERS

For the reasons discussed above, the Court finds that Respondents unlawfully detained Al Mazary under 8 U.S.C. § 1225(b)(2)(A) because she is not an "arriving alien" and does not meet the statutory criteria on which Respondents relied. The Court further finds that any detention of Al Mazary was authorized only by 8 U.S.C. § 1226(a). Thus, the petition is granted and Respondents' motion to dismiss (Dkt. 13) is denied. The Clerk of Court is directed to enter judgment in Al Mazary's favor and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 11, 2026
Rochester, New York